1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

VICKI CHANG,

            Plaintiff,

11      v.

12   ANDREW VANDERWIELEN, et al.,

13            Defendants.

CASE NO. C22-0013-SKV

ORDER RE: MOTION TO DISMISS

14
15
16

INTRODUCTION

17      Plaintiff Vicki Chang, proceeding pro se, raises claims under 42 U.S.C. § 1983 and state

18   law relating to events occurring at the University of Washington Harbor View Medical Center

19   (Harborview) in early January 2019.  Dkts. 1 & 1-1.  She named as Defendants Washington State

20   Patrol Troopers Andrew Vanderwielen and Edward Collins ("WSP Defendants"), Seattle Police

21   Officer Brian Hunt, the City of Seattle, University of Washington security guard Jane Gurevich,

22   and Dr. Riddhi Kothari, D.O.  *See id*.  The Court dismissed Plaintiff's claims against Dr. Kothari.

23   Dkt. 80.  Now pending before the Court is WSP Defendants' Motion to Dismiss under Federal

24

1  Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. 68.  Plaintiff opposes the motion.  Dkts. 78,

2  81 & 90.[1]  The Court, having considered the briefing, herein GRANTS in part and DENIES in

3  part WSP Defendants' Motion to Dismiss as set forth below.

4  BACKGROUND

5  A.    Plaintiff's Factual Allegations

6          On January 6, 2019, Plaintiff found her residence without power, heat, or hot water.  Dkt.

7  1-1 at 2.  She experienced significant physical and mental distress, with potential problems

8  including "hypothermia, a panic attack, nervous breakdown, and being really disoriented."  *Id*. at

9  2-3.  Plaintiff called 9-1-1 and was taken by ambulance to the Harborview emergency room,

10  where she was checked in, but not permitted to see a doctor despite her serious mental and

11  physical health issues.  *Id*. at 3.

12         Plaintiff alleges that Trooper Vanderwielen and security guard Gurevich claimed Plaintiff

13  was "'flopping around' on the waiting room floor," and "needed to be forcibly discharged

14  without being seen by a doctor[.]"  *Id*.  Trooper Vanderwielen demanded that Plaintiff get into a

15  wheelchair and "wheeled her erratically into a metal detector, parking garage ticket machine, and

16  the wall, frightening [her]."  *Id*.  He claimed he tried to stand Plaintiff up and that she "'flopped

17  to the ground,'" but plaintiff "recalls that he then body slammed her to the ground."  *Id*. at 3-4.

18  On September 13, 2019, Plaintiff showed security camera footage of the incident to a doctor,

19

20         [1] With consideration of Plaintiff's pro se status, the Court finds it appropriate to accept the two
memoranda filed after the Court's Order allowing for supplemental briefing.  *See* Dkts. 79, 81 & 90.

21  Likewise, while not fully compliant with Local Civil Rule 7(g), the Court will consider Plaintiff's timely-
filed surreply.  Dkt. 99.  The Court will not, however, consider any attachments to Plaintiff's briefing or

22  several other extraneous filings, *see* Dkts. 73, 90, 92-93, in reviewing the sufficiency of Plaintiff's
pleading under Rule 12(b)(6).  *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (the Court, as a

23  general matter, may not consider material beyond the complaint in ruling on a motion under Rule
12(b)(6)).  **Plaintiff is further advised that she must, in future, refrain from submitting documents**

24  **or other filings neither requested by the Court, nor allowed under the Court's rules**.

who agreed "Plaintiff did not flop or move to the ground voluntarily," and was instead "physically brought . . . to the ground[.]" *Id.* (also stating: "[P]laintiff 'asks me to watch a video of the security footage, which shows her being wheeled into the lobby by several security personnel, perhaps including a police officer.  She stands up and is brought to the ground.  We discuss that I am not qualified to give her an opinion regarding the level of force used. . .  States she wants knee MRI.'")  While lying on the ground and "not resisting arrest or assaulting anyone in anyway, . . . Gurevich leaned on and squished [P]laintiff's knees a lot" and Trooper Vanderwielen "cut through exactly one of the two leather handles of her handbag with a knife, causing property damage[.]" *Id.* at 4.  Gurevich then falsely claimed Plaintiff "assaulted her while lying prone on the ground . . . by kicking her on the side several times[,]" resulting in Plaintiff's arrest and false imprisonment.  *Id.*

Plaintiff later tried to discuss the incident with Trooper Collins, Trooper Vanderwielen's supervisor.  *Id.* at 5.  Trooper Collins insisted Plaintiff "'flopped'" to the ground, that Trooper Vanderwielen was justified in restraining her, "using force" to hold her to the ground with Gurevich, "personally injuring" her, damaging her property, and causing her arrest.  *Id.* at 5-6.  Trooper Collins refused to take any action against Trooper Vanderwielen.  *Id.* at 6.

B.     Procedural History and Claims

On January 6, 2022, Plaintiff filed a Complaint in this Court containing the above-described allegations.  She alleges Trooper Vanderwielen is liable for the torts of assault, personal injury, property damage, false arrest, false imprisonment, damage to property, and emotional distress.  *Id.* at 7.  She also alleges Trooper Vanderwielen violated her civil rights through the use of excessive force and damage to and seizure of personal property in violation of her Fourth and Fourteenth Amendment rights.  *Id.* at 8.  She believes the incident may have been

1  motivated by race, national origin, and/or disability status and asks for damages under RCW

2  9A.36.083.

3       Plaintiff alleges Trooper Collins is liable for damages resulting from his negligence in

4  training and supervising Trooper Vanderwielen and Officer Hunt.  *Id.*  She alleges Trooper

5  Collins violated her civil rights in failing to adequately train, supervise, and discipline Trooper

6  Vanderwielen, "who has a serious history of police misconduct and dishonesty, including perjury

7  on duty, and was a Brady list officer" prior to his encounter with Plaintiff.  *Id.*  She asserts

8  Trooper Collins' liability for punitive damages, including under RCW 9A.36.083, "[t]o the

9  extent" he "was callously indifferent, intentionally negligent, or acted with reckless disregard[.]"

10  *Id.*

11       On February 27, 2022, Plaintiff filed a tort claim with the Office of Risk Management,

12  Department of Enterprise Services (DES).  Dkt. 68-1, ¶5.

13                              <u>DISCUSSION</u>

14       WSP Defendants move to dismiss Plaintiff's claims under Federal Rules of Civil

15  Procedure 12(b)(1) and 12(b)(6).  They argue an absence of jurisdiction over Plaintiff's state law

16  claims due to Plaintiff's failure to satisfy the RCW 4.92 pre-suit filing requirements.  They

17  alternatively argue the claims of assault, false arrest, and false imprisonment are barred by the

18  applicable statute of limitations and that the remaining state law claims should be dismissed for

19  failure to state a claim upon which relief may be granted.  WSP Defendants also assert their

20  entitlement to qualified immunity from Plaintiff's § 1983 claims.  They contend she cannot

21  prevail against Trooper Collins because she does not allege his personal participation, that

22  Trooper Vanderwielen is entitled to qualified immunity in relation to the excessive force claim,

23

24

1   and that her claim of improper seizure or deprivation of property fails under either the Fourth or

2   Fourteenth Amendments.

3   A.   Rule 12(b)(1) Motion to Dismiss

4        A defendant may move for dismissal under Rule 12(b)(1) if the Court lacks subject

5   matter jurisdiction over the claims at issue.  "'Federal courts are courts of limited jurisdiction,'

6   possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S.

7   251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

8   The party asserting jurisdiction bears the burden of establishing jurisdiction exists.  *See*

9   *Kokkonen*, 511 U.S. at 377.

10       In considering a Rule 12(b)(1) motion to dismiss, the Court assumes as true the factual

11  allegations in the complaint and resolves any factual ambiguities in favor of the plaintiff.

12  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d

13  129, 131 (2d Cir. 1998) (citation omitted).  The Court may not, however, draw any jurisdictional

14  inferences in favor of the plaintiff.  *See Norton v. Larney*, 266 U.S. 511, 515 (1925); *Drakos*, 140

15  F.3d at 131 (citation omitted).  In reviewing a motion under Rule 12(b)(1), the Court is not

16  restricted to the face of the pleadings and "may review any evidence, such as affidavits and

17  testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v.*

18  *United States*, 850 F.2d 558, 560 (9th Cir. 1988).

19       In seeking dismissal under Rule 12(b)(1), WSP Defendants argue the Court lacks

20  jurisdiction to consider Plaintiff's state law claims given her failure to comply with pre-suit filing

21  requirements.  Specifically, pursuant to RCW 4.92.100: "All claims against the state, or against

22  the state's officers, employees, or volunteers, acting in such capacity, for damages arising out of

23  tortuous conduct, must be presented to the risk management division."  That is, an individual

24

1   must first file a claim with the Office of Risk Management before filing a tort action against the

2   State of Washington or against state employees. *Levy v. State*, 91 Wn. App. 934, 941, 957 P.2d

3   1272 (1998).[2]  Also, pursuant to RCW 4.92.110:

4   > No action subject to the claim filing requirements of RCW 4.92.100 shall be
>   commenced against the state, or against any state officer, employee, or volunteer,
5   > acting in such capacity, for damages arising out of tortious conduct until sixty
>   calendar days have elapsed after the claim is presented to the office of risk
6   > management in the department of enterprise services.

7   These requirements "'allow government entities time to investigate, evaluate, and settle claims.'"

8   *Lee v. Metro Parks Tacoma*, 183 Wn. App. 961, 968, 335 P.3d 1014 (2014) (quoting *Medina v.*

9   *Pub. Util. Dist. No. 1 of Benton Cnty.*, 147 Wn. 2d 303, 310, 53 P.3d 993 (2002)).

10          The RCW 4.92 claim-filing requirements are jurisdictional, mandatory, and operate as a

11   condition precedent to a suit against government bodies and employees. *Mangaliman v.*

12   *Washington State DOT*, C11-1591-RSM, 2014 WL 1255342, at *4 (W.D. Wash. Mar. 26, 2014)

13   (citing *Levy*, 91 Wn. App. at 941-42).  Courts strictly construe compliance with these statutory

14   filing requirements, *Schoonover v. State*, 116 Wn. App. 171, 178, 64 P.3d 677 (2003) (citations

15   omitted), and it is well settled that dismissal of a case is proper when a plaintiff fails to comply

16   with the statutorily-mandated claim filing procedures, *Hyde v. University of Washington Medical*

17   *Center*, 186 Wn. App. 926, 929, 347 P.3d 918 (2015); *Levy*, 91 Wn. App. at 942 (citing *Kleyer v.*

18   *Harborview Med. Ctr.*, 76 Wn. App. 542, 545-46, 887 P.2d 468 (1995)).  *See also Malone v.*

19   *Huguenin*, C11-5643-RBL, 2012 WL 3877731, at *3 (W.D. Wash. Sept. 6, 2012) ("[Plaintiff's]

20   state law claims must be dismissed.  [Plaintiff] fails to meet a condition precedent: he failed to

21   file a tort claim with the State prior to filing this complaint, as required by RCW 4.92.100.");

22

---

23          [2]  The pre-suit notice requirements do not, on the other hand, apply to Plaintiff's § 1983 claims.
*Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999) ("In general, state notice of claim statutes have no
24   applicability to § 1983 actions.") (citing *Felder v. Casey*, 487 U.S. 131, 140–41 (1988)).

*Amo v. Harborview Med. Ctr.*, 13 Wn. App. 2d 1019, 2020 WL 1917461, at *3-4 ("[B]efore filing her complaint for medical negligence against Harborview and its employee, Amo was required to file a claim with the office of risk management in Olympia, pursuant to RCW 4.92.110 and RCW 4.92.210. Because she failed to do so, the trial court properly dismissed the complaint."), *review denied*, 196 Wn. 2d 1010, 473 P.3d 258 (2020). This remains true whether or not a plaintiff is aware of the pre-suit filing requirement. As observed by this Court: "No court has excused compliance with the presuit claim filing statutes based on a lack of knowledge of the requirements. To the contrary, compliance with the claim filing procedure is mandatory even where the requirements might appear to be 'harsh and technical.'" *Amo*, 2020 WL 1917461, at *3 (quoting *Levy*, 91 Wn. App. at 942).

Here, Plaintiff submitted a tort claim form to DES on February 27, 2022, Dkt. 68-1, ¶5, almost two months *after* the filing of her Complaint on January 6, 2022, Dkt. 1. Plaintiff does not dispute this fact. She, instead, states that she timely filed a new lawsuit more than sixty days after her February 2022 tort claim. *See Chang v. Vanderwielen*, C22-0657-JCC, Dkt. 1 (W.D. Wash., filed May 16, 2022). *See also id.*, Dkt. 4 (May 17, 2022) (dismissing second lawsuit because it was duplicative of the current action). However, submitting a tort claim, and filing a separate lawsuit, after a lawsuit has commenced does not satisfy Washington's pre-suit notice requirement. "[T]he notice requirement in RCW 4.92.110 cannot be satisfied after a litigant is already inside the courthouse—it is a condition precedent to entering." *Pickard-Aguilar v. Washington State Emp. Sec. Dep't*, No. C20-1248-RSM-DWC, 2020 WL 8093446, at *2 (W.D. Wash. Dec. 18, 2020), *report and recommendation adopted*, 2021 WL 124334 (Jan. 13, 2021) (citing *Mangaliman*, 2014 WL 1255342, *4). Plaintiff's failure to meet this jurisdictional

1    condition precedent requires this Court to dismiss her state law claims.[3]  Further, in finding

2    Plaintiff's state law claims subject to dismissal under Rule 12(b)(1), the Court need not and does

3    not address the alternative arguments for dismissal of these claims under Rule 12(b)(6).

4    B.    Rule 12(b)(6) Motion to Dismiss

5          Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon

6    which relief may be granted.  To survive a Rule 12(b)(6) motion, "a complaint must contain

7    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

8    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

9    544, 570 (2007)).  This requirement is met when the plaintiff "pleads factual content that allows

10   the court to draw the reasonable inference that the defendant is liable for the misconduct

11   alleged." *Id*.  Although a complaint need not provide detailed factual allegations, it must give

12   rise to something more than mere speculation of a right to relief.  *Twombly*, 550 U.S. at 555.

13         In considering a Rule 12(b)(6) motion, the Court limits its review to the Complaint.  *Lee*

14   *v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  The Court accepts all facts alleged in the

15   complaint as true and makes all inferences in the light most favorable to the non-moving party.

16   *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted).

17   The Court also interprets a pro se complaint liberally.  *Sause v. Bauer*, __U.S. __, 138 S.Ct.

18   2561, 2563 (2018).  However, the Court need not "'supply essential elements of the claim that

19   were not initially pled.'"  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v.*

20   *Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).  A pro se

21

22         [3] To the extent Plaintiff intended her argument as to the "date of discovery" to apply to the pre-
     suit notice requirement, *see* Dkt. 81 at 9 & Dkt. 90 at 12, it does not alter the Court's conclusion.  That is,
23   while an incapacitated claimant may be exempted from personally verifying a claim, such a claimant is
     nonetheless required to file a pre-suit claim sixty days before filing a lawsuit. *See, e.g., Levy*, 91 Wn.
24   App. at 942-44; *Schoonover*, 116 Wn. App. at 177-79.

1    complaint may be dismissed "'if it appears beyond doubt that the plaintiff can prove no set of

2    facts in support of his claim which would entitle him to relief.'" *Mangiaracina v. Penzone*, 849

3    F.3d 1191, 1195 (9th Cir. 2017) (quoting *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014)).

4          As stated above, WSP Defendants argue Plaintiff's § 1983 claims should be dismissed

5    because they are entitled to qualified immunity.  They point to Plaintiff's failure to allege

6    Trooper Collins' personal participation in the events at issue and they challenge the sufficiency

7    of the claims against Trooper Vanderwielen under the Fourth or Fourteenth Amendments.  The

8    Court examines the pertinent standards, Defendants' arguments, and Plaintiff's opposition to

9    those arguments below.

10         1.     Section 1983 and Qualified Immunity Standards:

11         "Section 1983 is not itself a source of substantive rights, but a method for vindicating

12   federal rights elsewhere conferred."  *Sampson v. Cty. of L.A.*, 974 F.3d 1012, 1018 (9th Cir.

13   2020) (cleaned up and quoted sources omitted).  To state a § 1983 claim, "a plaintiff must

14   plausibly allege that she suffered the deprivation of a federally protected right and that the

15   alleged deprivation was committed by a person acting under color of state law." *Id*.

16   (cleaned up and quoted sources omitted).

17         Qualified immunity may shield an official from liability for damages under § 1983

18   "'insofar as their conduct does not violate clearly established statutory or constitutional rights of

19   which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

20   (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To determine whether qualified

21   immunity applies, the Court asks "whether (1) the plaintiff has plausibly alleged a violation of a

22   constitutional right, and (2) the constitutional right was 'clearly established' at the time of the

23

24

1  conduct at issue." *Wilk v. Neven*, 956 F.3d 1143, 1148 (9th Cir. 2020) (quoting *Pearson*, 555

2  U.S. at 236).

3       2.    Personal Participation of Trooper Collins:

4       Plaintiff alleges Trooper Collins violated her civil rights in failing to adequately train,

5  supervise, and discipline Trooper Vanderwielen. Dkt. 1-1 at 8. She alleges Trooper

6  Vanderwielen has a history of prior misconduct. *Id*. Plaintiff also alleges Trooper Collins is

7  liable for punitive damages "[t]o the extent" he was "callously indifferent, intentionally

8  negligent, or acted with reckless disregard[.]" *Id.*[4]

9       A plaintiff in a § 1983 action must allege facts showing how individually named

10  defendants caused or personally participated in causing the harm alleged in the complaint.

11  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Supervisory personnel may not be held

12  liable for actions or omissions of their subordinates under a respondeat superior theory. *Taylor*

13  *v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "But supervisors 'can be held liable for: 1) their

14  own culpable action or inaction in the training, supervision, or control of subordinates; 2) their

15  acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct

16  that showed a reckless or callous indifference to the rights of others.'" *Hyde v. City of Willcox*,

17  23 F.4th 863, 873 (9th Cir. 2022) (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir.

18  2000)). *See also Taylor*, 880 F.2d at 1045 (supervisors may be held liable only if they

19  "participated in or directed the violations, or knew of the violations and failed to act to prevent

20  them.") With a failure to train claim, a plaintiff must show a supervisor was "deliberately

21

22  _____

23       [4] Because Plaintiff sues Troopers Collins and Vanderwielen in their individual capacities, *see* Dkt.
     1-1 at 1-2, her claims are not barred by the Eleventh Amendment. *Ashker v. California Dept. Of
     Corrections*, 112 F.3d 392, 394-95 (9th Cir. 1997) (citing *Pena v. Gardner*, 976 F.2d 469, 472-74 (9th

24  Cir. 1992)).

1   indifferent to the need to train subordinates, and the lack of training actually caused the

2   constitutional harm or deprivation of rights." *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th

3   Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 59 (2011)).  A plaintiff must allege facts to

4   show the official "'disregarded a known or obvious consequence'", such as "that a particular

5   omission in their training program causes [employees] to violate citizens' constitutional rights."

6   *Connick*, 563 U.S. at 61 (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

7        Plaintiff does not allege Trooper Collins personally participated in the January 2019

8   incident at Harborview.  Nor does she explain how Trooper Collins' training, supervision, or

9   control caused Trooper Vanderwielen's violation of her constitutional rights.  Instead, as related

10  to Trooper Collins, Plaintiff's only factual allegations include her attempt to discuss the incident

11  with him, his insistence that the actions taken during the incident were justified, and that he

12  failed to take any action against Trooper Vanderwielen for those actions.  Dkt. 1-1 at 5-6.  These

13  facts do not suffice to state a claim against Trooper Collins under § 1983.  Instead, Plaintiff's

14  allegations of Trooper Collins' involvement in the alleged violations of her civil rights are vague

15  and conclusory, appear to rest on no more than his supervisory role, and are therefore insufficient

16  to withstand the motion to dismiss.  *See Ivey*, 673 F.2d at 268.  Because Plaintiff fails to state a

17  claim upon which relief may be granted, Trooper Collins is entitled to dismissal of Plaintiff's

18  claims against him under Rule 12(b)(6).

19        3.    Excessive Force by Trooper Vanderwielen:

20        Plaintiff alleges Trooper Vanderwielen violated her civil rights through the use of

21  excessive force.  Dkt. 1-1 at 8.  In explaining events leading up to this use of force, Plaintiff

22  asserts that she arrived at Harborview "experiencing significant physical and mental distress"

23  and with "potential problems including but not limited to hypothermia, a panic attack, nervous

24

breakdown, and being really disoriented." *Id*. at 2-3.  Trooper Vanderwielen and security guard

Gurevich claimed Plaintiff was "'flopping around' on the waiting room floor" and "needed to be

forcibly discharged." *Id*. at 3.  After demanding she get into a wheelchair, Trooper

Vanderwielen "wheeled her erratically into a metal detector, parking garage ticket machine, and

the wall, frightening [her.]" Dkt. 1-1 at 3.  Then, while claiming "he tried to stand [her] up but

she 'flopped' to the ground," Plaintiff recalls Trooper Vanderwielen "body slammed her to the

ground." *Id*.  A doctor, nine months after the incident, described video footage as showing:

"'She stands up and is brought to the ground.'" *Id*. at 4.  Subsequently, while Plaintiff was lying

on the ground and not resisting arrest "or assaulting anyone in anyway," Gurevich leaned on and

"squished" Plaintiff's knees "a lot", Trooper Vanderwielen restrained her and used "force" to

hold her to the ground with Gurevich, and Plaintiff was accused of kicking Gurevich several

times. *Id*. at 4-5.

"*[A]ll* claims that law enforcement officers have used excessive force – deadly or not – in

the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed

under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive

due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).

The evaluation of a Fourth Amendment excessive force claim requires a determination as to

"whether the officers' actions were objectively reasonable in light of the facts and circumstances

confronting them." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022)

(cleaned up and quoted sources omitted).  To make that determination, the Court considers:

"'(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the

type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the

balance between the gravity of the intrusion on the individual and the government's need for that

1    intrusion.'"  *Id.* (quoted sources omitted).  The Court considers the reasonableness of the force

2    used "'from the perspective of a reasonable officer on the scene, rather than with the 20/20

3    vision of hindsight.'"  *Id.* (quoting *Graham*, 490 U.S. at 396).  "It is also well-established that

4    police officers 'are not required to use the least intrusive degree of force possible.'"  *Id.* (quoting

5    *Lowry v. City of San Diego*, 858 F.3d 1248, 1259 (9th Cir. 2017)).  "When an officer carries out

6    a seizure that is reasonable, taking into account all relevant circumstances, there is no valid

7    excessive force claim."  *County of Los Angeles v. Mendez*, __ U.S. ___, 137 S.Ct. 1539, 1547

8    (2017).

9                    a.    Sufficiency of allegations:

10         Some of Plaintiff's allegations lack sufficient clarity or detail to allow for an

11   understanding as to the degree of force employed by Trooper Vanderwielen.  It is not clear, for

12   example, what type and amount of force Trooper Vanderwielen employed to first effectuate

13   Plaintiff's removal from the emergency room or to later hold her to the ground while Gurevich

14   leaned on and "squished" Plaintiff's knees.  Dkt. 1-1 at 3-4.  Plaintiff also fails to indicate

15   whether Trooper Vanderwielen's erratic movement of the wheelchair caused any harm beyond

16   "frightening" her, and she does not identify any of the "physical injuries" she suffered as a result

17   of her interactions with Trooper Vanderwielen.  *Id.* at 3, 7.

18         Plaintiff does, however, allege that Trooper Vanderwielen "body slammed" her to the

19   ground and quotes a doctor's note as reflecting her request for a knee MRI nine months after the

20   incident.  *Id.* at 3.[5]  Taking the body slam allegation as true and drawing an inference from the

21

22         [5] WSP Defendants read one of Plaintiff's memoranda in opposition to the motion to dismiss as
     clarifying that her excessive force claim is based on Gurevich squishing her knees a lot and Trooper
23   Vanderwielen cutting through one of the handles to her handbag.  *See* Dkt. 98 at 8 (citing Dkt. 90 at 12).
     The Court, in considering the Rule 12(b)(6) motion to dismiss, considers Plaintiff's allegations as set
24   forth in the complaint.  *See Lee*, 250 F.3d at 688.

doctor's note in Plaintiff's favor, the complaint can be read to suggest Trooper Vanderwielen

employed a significant amount of force. *See, e.g., Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th

Cir. 2021) (finding "take-down maneuver," whereby officers tripped and "'forcibly' threw

[plaintiff] face-first onto the pavement[,]" causing immediate extreme pain and long-term

physical pain for which he received medical treatment, involved a "'substantial' and 'aggressive

use' of force."); *Young v. Cnty. of L.A.*, 655 F.3d 1156, 1161 (9th Cir. 2011) (defining as

"intermediate force" that which is "capable of inflicting significant pain and causing serious

injury[,]" such as through the use of pepper spray or baton blows, and "while less severe than

deadly force, nonetheless present[ing] a significant intrusion upon an individual's liberty

interests."); *Santos v. Gates*, 287 F.3d 846, 853-54 (9th Cir. 2002) (finding force applied in take-

down "quite severe" where, "as a result of being taken to the ground, Santos suffered a broken

vertebra which caused him both pain and immobility.") *See also United States v. Vasquez*, 843

F. Supp. 2d 1147, 1150 n.1 (D. Or. 2012) ("The American Heritage Dictionary defines "body

slam" as "[a] wrestling move in which one wrestler picks up and throws the other to the floor.").

        As to the governmental interest in the use of force, pertinent factors include "(1) how

severe the crime at issue was, (2) whether the suspect posed an immediate threat to the safety of

the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to

evade arrest by flight." *Williamson*, 23 F.4th at 1153 (cleaned up and quoted sources omitted).

The second factor is the most important consideration. *Id*. However, the factors are non-

exhaustive and the Court examines "the totality of the circumstances, including the availability

of less intrusive alternatives to the force employed and whether proper warnings were given."

*Id*. Where an individual's conduct poses a risk to the lives or safety of bystanders, the Court also

considers the individual's "relative culpability" under the second pertinent factor. *Id*. In

1   addition, the Court may consider "'whether the suspect has exhibited signs of mental illness'" as

2   a factor in assessing the reasonableness of the force used.  *Crawford v. City of Bakersfield*, 944

3   F.3d 1070, 1078 (9th Cir. 2019) (finding district court correctly found evidence of mental illness

4   relevant because the reasonableness of an officer's use of deadly force "depended in part on

5   whether he knew or should have known [the behavior] was caused by mental illness.") (quoting

6   *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034, n.9 (9th Cir. 2018)).

7          Here, Plaintiff alleges she was in the midst of a mental health crisis and required medical

8   care, was claimed to be "flopping around" on the waiting room floor of the emergency room and

9   in need of being forcibly discharged, was body slammed to the ground after doing nothing more

10  than standing up from a wheelchair, and was physically restrained while on the ground despite

11  her lack of any resistance.  There is no indication whether she received any warnings prior to the

12  use of force.

13         As with the type and amount of force employed, the lack of clarity and minimal detail in

14  the complaint make it difficult to assess the governmental interest in the use of force.  It remains

15  unclear, for example, why the decision to remove Plaintiff from the emergency room was made

16  and why she was brought to the ground during the removal.  Plaintiff stresses the severity of her

17  mental health crisis during these events, alleging she was found by Harborview's Involuntary

18  Treatment Act Court to have been "gravely disabled and mentally incompetent at the time of this

19  incident[.]"  Dkt. 1-1 at 7.  Also, although denying she "flopped" to the ground after standing up

20  from the wheelchair, she does not directly or clearly dispute the claim she had earlier been seen

21  "'flopping around' on the waiting room floor[.]"  *Id.* at 3.[6]

22  _____

23         [6] In opposing the motion to dismiss, Plaintiff asserts that security camera footage "clearly shows
    [her] seated in the triage area when Vanderwielen and [others] decide to falsely imprison her and prevent
    her from getting medical care," and she denies she posed a threat to either herself or others.  *See, e.g.*,

24  Dkt. 81 at 6, 8 ("People that pose a threat to themselves or others as defendant Vanderwielen claims he

Taking Plaintiff's allegations as true, there appears to have been at least some interest in the use of force in order to effectuate Plaintiff's removal from the premises. *See generally Williamson*, 23 F.4th at 1152-53 (finding interest in use of force low, but "not nonexistent."; noting that, even if governmental interest in the use of force is low and even if an individual's resistance is passive, some degree of force may still be deemed necessary to attain compliance). However, Plaintiff's allegations include a body slam of a mentally unstable individual, who came to an emergency room seeking medical care and who did no more than stand up from a wheelchair.  They also entail physical restraint employed while she was on the ground and not resisting.  Considering these particular allegations, any interest in the use of force appears minimal.

In the final step of the Fourth Amendment evaluation, the Court must balance the gravity of the intrusion onto Plaintiff's Fourth Amendment rights through the use of force against the government's need for that intrusion.  Here, the Court must balance a significant use of force through a body slam with the minimal governmental interest in employing that force.  Liberally construed, this allegation sets forth a Fourth Amendment excessive force claim sufficient to withstand the Rule 12(b)(6) motion to dismiss.  *See Pullum v. Tujague*, No. C18-0517, 2018 WL 6671515, at *2 (N.D. Cal. Dec. 19, 2018) (finding a cognizable Fourth Amendment excessive force claim where plaintiff alleged that, after his arrival at a medical center, he was asked to leave by a police officer and complied with that order, the officer "'punched [him] in the throat

---

observed in plaintiff have an Emergency Condition that needs to be treated in the ER . . .  Plaintiff alleges that at the time of this January 5-6 false imprisonment in the triage area, she did not pose a threat to others or herself, but merely had the emergency medical conditions of hypothermia and serious mental health problems that needed treatment including being gravely disabled and confused[.]")

1    and body slam[med] him on a bed[,]'" he was subsequently falsely imprisoned, strip searched,

2    humiliated, and subjected to abuse, suffered injuries and required, but was denied medical care).

3          The Court also finds it prudent to address Plaintiff's attempt to reframe and add to her

4    claims in opposing the motion to dismiss.  Plaintiff argues the WSP Defendants violated her

5    clearly established constitutional rights to medical care under the Eighth and Fourteenth

6    Amendments and the "federal patient antidumping law EMTALA[.]"  Dkt. 81 at 3-4; *see also*

7    Dkts. 78, 90.  Because these allegations are not included in the complaint, they do not serve to

8    avoid dismissal under Rule 12(b)(6).  Plaintiff could not, in any event, state such claims.  She

9    cannot rely on the Eighth Amendment because she was not a convicted prisoner at the time of

10   the incident.  *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (Eighth

11   Amendment provides for a constitutional right to adequate medical treatment for inmates serving

12   custodial sentences following a criminal conviction, while a pretrial detainee's rights arise under

13   the Fourteenth Amendment) (internal citations omitted), *cert. denied sub nom. San Diego Cnty.*

14   *v. Sandoval*, 142 S. Ct. 711 (2021).  She cannot rely on the Emergency Medical Treatment and

15   Active Labor Act (EMTALA) because such a claim cannot be pursued under § 1983 and only

16   provides for redress from a "participating hospital[.]"  *Trahan v. Clayton Dublier & Rice*, 741 F.

17   App'x 397, 399 (9th Cir. 2018).  Also, any allegation of a denial of medical care after an arrest,

18   but prior to pre-trial detention, would appear to lie under the Fourth Amendment.  *See Est. of*

19   *Cornejo ex rel. Solis v. City of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015) ("[S]uspects

20   have a Fourth Amendment right to 'objectively reasonable post-arrest [medical] care' until the

21   end of the seizure.") (quoting *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th

22   Cir. 2006)); *Rosales v. Cnty. of San Diego*, 511 F. Supp. 3d 1070, 1091 (S.D. Cal. 2021)

23   ("Claims for the denial of medical assistance after an arrest are analyzed under the Fourth

24

1   Amendment."). *But see J. K. J. v. City of San Diego*, 17 F.4th 1247, 1257 (9th Cir. 2021)

2   (analyzing arrestee's right to medical care under both the Fourth and Fourteenth Amendments

3   while declining to decide which governs). *See also Arrington-Bey v. City of Bedford Heights,*

4   *Ohio*, 858 F.3d 988, 993 (6th Cir. 2017) (finding no clearly established law, in the Sixth Circuit

5   or elsewhere, required arresting officers to take a mentally unstable individual to a hospital rather

6   than a jail).

7   The Court, in sum, finds the excessive force claim against Trooper Vanderwielen

8   sufficient to withstand the motion to dismiss for failure to state a claim upon which relief may be

9   granted. Having found as such, the Court must address WSP Defendants' argument that Trooper

10   Vanderwielen is entitled to dismissal of this claim based on qualified immunity.

11   　　　　b.　　Qualified immunity:

12   WSP Defendants argue that, even if Plaintiff could establish the use of excessive force,

13   Trooper Vanderwielen is entitled to qualified immunity because the violated constitutional rights

14   were not "clearly established" at the time of the incident. *Wilk*, 956 F.3d at 1148. They note that

15   Plaintiff bears the burden of proving the right claimed to be violated was clearly established at

16   the time of the alleged violation. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000)

17   ("Once the defense of qualified immunity is raised by the defendant, the plaintiff bears the

18   burden of showing that the rights allegedly violated were 'clearly established.'")

19   "Qualified immunity attaches when an official's conduct does not violate clearly

20   established statutory or constitutional rights of which a reasonable person would have known."

21   *Villegas v. Cortesluna*, __ U.S. __, 142 S. Ct. 4, 7 (2021) (cleaned up and quoted source

22   omitted). "A right is clearly established when it is sufficiently clear that every reasonable

23   official would have understood that what he is doing violates that right." *Id*. There need not be

24

1    "'a case directly on point, but existing precedent must have placed the statutory or constitutional

2    question beyond debate.'"  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al–Kidd*,

3    563 U.S. 731, 741 (2011)).  The inquiry into whether a right is clearly established "must be

4    undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.*

5    (cleaned up and quoted sources omitted).  Specificity is particularly important in the Fourth

6    Amendment context, as "'it is sometimes difficult for an officer to determine how the relevant

7    legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'"  *Id*.

8    (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

9         The Supreme Court has directed courts to resolve questions of qualified immunity "at the

10   earliest stage of litigation possible."  *A.D. v. California Highway Patrol*, 712 F.3d 446, 456 (9th

11   Cir. 2013) (citations omitted).  *Accord Wood v. Moss*, 572 U.S. 744, 755 n.4 (2014).  However,

12   determining whether qualified immunity applies in the pre-trial motion stage can be problematic.

13   *See, e.g., Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) ("Determining claims of qualified

14   immunity at the motion-to-dismiss stage raises special problems for legal decision making.").

15   That is, the Court must balance the fact that a complaint suffices to survive a motion to dismiss

16   by stating a claim to relief that is plausible on its face, with the fact that qualified immunity sets a

17   "low bar," allowing "'government officials breathing room to make reasonable but mistaken

18   judgments about open legal questions[,]'" and, when properly applied, "protect[ing] 'all but the

19   plainly incompetent or those who knowingly violate the law.'"  *Id*. (citing *Iqbal*, 556 U.S. at 678,

20   and quoting *al-Kidd*, 563 U.S. at 743).

21        In considering qualified immunity on a motion to dismiss, the Court must consider

22   whether the complaint "alleges sufficient facts, taken as true, to support the claim that the

23   officials' conduct violated clearly established constitutional rights of which a reasonable officer

24

1    would be aware 'in light of the specific context of the case.'" *Id.* (quoted sources omitted).  If

2    the complaint "'contains even one allegation of a harmful act that would constitute a violation of

3    a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their

4    claims." *Id.* (quoting *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 872

5    (9th Cir. 1992)).

6          WSP Defendants argue Trooper Vanderwielen is entitled to qualified immunity because

7    Plaintiff cannot establish that the force an officer may use in discharging a person "experiencing

8    significant physical and mental distress" from a hospital emergency room had been clearly

9    established at the time of the incident.  In response, Plaintiff primarily focuses on claims not

10   included in her complaint and on cases that do not entail Fourth Amendment excessive force

11   claims.  *See, e.g.*, Dkt. 78 at 2-3; Dkt. 81 at 3-7; Dkt. 90 at 4-10.[7]  Further, the two Fourth

12   Amendment excessive force cases Plaintiff cites are factually dissimilar and do not otherwise

13   support the violation of a clearly established constitutional right at the time of her interactions

14   with Trooper Vanderwielen.  *See Hyde v. City of Willcox*, 23 F.4th 863, 871-73 (9th Cir. 2022)

15   (finding that a final use of a taser and head restraint on an already shackled and handcuffed

16   detainee who soon after stopped breathing and eventually died was excessive because it was

17   "clearly established that officers cannot use intermediate force when a suspect is restrained, has

18   stopped resisting, and does not pose a threat."); *Tinius v. Carroll Cnty. Sheriff Dep't*, 321 F.

19   _____

20        [7] Plaintiff contends, for example, that there is clearly established law of a constitutional violation
     through the denial of necessary medical treatment under the EMTALA.  She also cites to case law
     addressing other types of constitutional claims.  *See, e.g.*, *City of Revere v. Massachusetts Gen. Hosp.*,

21   463 U.S. 239, 245-46 (1983) (discussing Fourteenth Amendment right to medical care to persons injured
     while being apprehended by the police and finding obligation met through the act of taking the injured

22   person to a hospital for treatment); *Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989) ("Prison
     officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or

23   intentionally interfere with medical treatment.'") (quoted source omitted); *Hill v. McKinley*, 311 F.3d 899,
     903-05 (8th Cir. 2002) (addressing qualified immunity in relation to a prisoner alleging violations of her

24   Fourth Amendment right to privacy).

1   Supp. 2d 1064, 1068-69, 1074-78 (N.D. Iowa 2004) (finding no Fourth Amendment violation

2   where, pursuant to a "'community caretaking'" function, officers detained, transported to a

3   hospital, and assisted in restraining a plaintiff during an involuntary catheterization to obtain a

4   urine sample for diagnostic purposes; also finding officers entitled to qualified immunity even if

5   the catheterization assistance violated a constitutional right because, at the time, no case had

6   addressed the applicability of the community caretaker exception to the restraining of a person

7   during a medical procedure conducted for non-investigatory purposes).[8]

8          The Court does not, in any event, find a ruling on qualified immunity appropriate at this

9   juncture.  As reflected in the discussion above, Plaintiff's allegations do not allow for a full

10   understanding of the events at issue in her excessive force claim.  Nor is the Court able to

11   consider the security camera footage of the incident referenced in the complaint and alleged to

12   contradict statements later made by Trooper Vanderwielen.  *See* Dkt. 1-1 at 7; *accord* Dkt. 78 at

13   3 and Dkt. 81 at 4.  Accordingly, the Court finds a decision on qualified immunity now, without

14   more information as to the underlying factual circumstances relevant to Plaintiff's excessive

15   force claim, would be premature.  *See Moseley v. Dep't of Soc. & Health Servs.*, No. C17-5427-

16   BHS-JRC, 2020 WL 2497756, at *14 (W.D. Wash. Apr. 7, 2020) (finding a qualified immunity

17   determination in considering a Rule 12(c) motion "would be based on plaintiff's allegations

18   rather than a tangible set of facts with evidence support," and that there were still facts that had

19   not been fully developed), *report and recommendation adopted sub nom. Moseley v. DSHS*,

20

21          [8] Also, while the details of the incident remain unclear, Plaintiff may have omitted citation to case
22   law arguably relevant to her allegations.  *See, e.g.*, *Rice*, 989 F.3d at 1125-27 (denying qualified immunity
     in a "take-down" case where a body of relevant case law, sufficiently established before the plaintiff's
     2011 arrest, placed officers' use of substantial force against a passively resisting person beyond debate)
23   (citing, *inter alia, Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) (stating that the
     "right to be free from the application of non-trivial force for engaging in mere passive resistance was
24   clearly established prior to 2008.")).

2020 WL 2494702 (May 14, 2020); *Luyster v. Bishop*, No. C18-6022-BHS-TLF, 2020 WL 4059890, at *18 (W.D. Wash. Mar. 2, 2020) (declining to decide qualified immunity at the Rule 12(b)(6) stage without discovery and where the factual record was under-developed), *report and recommendation adopted*, 2020 WL 4058971 (July 20, 2020). *See also Wong v. United States*, 373 F.3d 952, 956-57 (9th Cir. 2004) (acknowledging the difficulty posed by deciding qualified immunity at the motion to dismiss stage where it requires a court to decide "far-reaching constitutional questions on a nonexistent factual record" and suggesting that, while government officials may raise qualified immunity on a motion to dismiss, "the exercise of that authority is not a wise choice in every case.")  Trooper Vanderwielen may reassert his entitlement to qualified immunity after further development of the record and through a motion for summary judgment.

      4.    <u>Damage to and Seizure of Personal Property</u>:

Plaintiff alleges Trooper Vanderwielen also violated her Fourth and Fourteenth Amendment rights through damage to and seizure of her personal property.  Dkt. 1-1 at 8. Specifically, she alleges Trooper Vanderwielen violated her constitutional rights by using a knife to cut through one of two handles on her handbag, "causing property damage[.]" *Id*. at 4.  Given the minimal detail provided, it is difficult to ascertain the precise nature of this claim.  Yet, however construed, the claim is subject to dismissal under Rule 12(b)(6).

To the extent Plaintiff alleges the cutting of her handbag strap violated her Fourth Amendment rights during the course of her arrest, she fails to set forth facts showing Trooper Vanderwielen's actions were objectively unreasonable.  At the time he cut the strap, Plaintiff was "lying prone on the ground and not resisting arrest or assaulting anyone in anyway[.]" Dkt. 1-1 at 4.  However, Plaintiff was also in the midst of a severe mental health crisis and in the process

1    of being forcibly removed from the emergency room.  Even taking her allegations as true, the

2    decision to cut the strap of a handbag, by an officer with an interest in protecting an individual

3    suffering a mental health crisis from harming herself or others, does not suffice to state a Fourth

4    Amendment claim of objectively unreasonable action in light of the facts and circumstances

5    confronting the officer.

6         Nor do the facts as alleged by Plaintiff suffice to state a claim that the cutting of the strap

7    constituted a warrantless search in violation of the Fourth Amendment's protection against

8    unreasonable searches and seizures.  *See* Dkt. 90 at 9 (raising this argument in opposing the

9    motion to dismiss).  Plaintiff does not allege Trooper Vanderwielen searched her handbag; she

10   alleges only that he cut one of the straps on the handbag.  Moreover, even assuming Plaintiff

11   contends a search occurred, she does not set forth sufficient factual support for a claim it was not

12   a permissible search incident to an arrest.  *See, e.g., United States v. Burnette*, 698 F.2d 1038,

13   1049 (9th Cir. 1983) (finding no unconstitutional search where purse carried by arrestee was

14   searched incident to and contemporaneously with the arrest).

15        Finally, Plaintiff does not sufficiently allege a violation of her Fourteenth Amendment

16   substantive or procedural due process rights because she does not set forth facts supporting a

17   claim she was deprived of a constitutionally protected property interest.  *See* U.S. Const. amend.

18   XIV (protecting against governmental deprivations of "life, liberty, or property" without due

19   process of law).  Indeed, Plaintiff does not allege she was actually deprived of her handbag or

20   any items within.  Again, she alleges Trooper Vanderwielen cut one handbag strap.  Because she

21   does not allege the deprivation of her property, she does not, at a fundamental level, state a due

22   process claim.  *See generally Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149

23   F.3d 971, 982 (9th Cir. 1998) (a procedural due process claim has two elements:  (1) the

24

1   deprivation of a constitutionally protected liberty or property interest; and (2) the denial of

2   adequate procedural protection).  Nor could it be said that the conduct alleged rises to the level of

3   a deprivation of a fundamental right or liberty interest "objectively, 'deeply rooted in this

4   Nation's history and tradition[]'" and therefore in violation of Plaintiff's substantive due process

5   rights.  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).  *See, e.g., County of*

6   *Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998) (the substantive component of the Due

7   Process Clause protects individuals from arbitrary deprivations by the government and "only the

8   most egregious official conduct can be said to be 'arbitrary in the constitutional sense[,]'"

9   amounting to "abuse of power" that "shocks the conscience.") (quoted and cited sources

10  omitted).  For this reason and for the reasons stated above, Plaintiff's Fourth and Fourteenth

11  Amendment claims against Trooper Vanderwielen for damage to and seizure of her personal

12  property are properly dismissed for failure to state a claim upon which relief may be granted.

13                                          CONCLUSION

14       WSP Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1)

15  and 12(b)(6), Dkt. 68, is GRANTED in part and DENIED in part.  The motion is GRANTED in

16  relation to Plaintiff's state law claims, her claims against Trooper Collins, and her claims against

17  Trooper Vanderwielen for damage to and seizure of her personal property, and those claims are

18  DISMISSED with prejudice.  The motion is DENIED as to the excessive force claim against

19  Trooper Vanderwielen and as to qualified immunity in relation to that claim.  Trooper

20  Vanderwielen may reassert his entitlement to qualified immunity on the excessive force claim

21  / / /

22  / / /

23  / / /

24

after further development of the record and through a motion for summary judgment.

Dated this 21st day of July, 2022.

S. KATE VAUGHAN
United States Magistrate Judge