1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VICKI CHANG,

                          Plaintiff,

        v.

ANDREW VANDERWIELEN, et al.,

                          Defendants.

Case No. C22-0013-SKV

ORDER GRANTING JANE
GUREVICH'S MOTION FOR
SUMMARY JUDGMENT

INTRODUCTION

        Plaintiff Vicki Chang, proceeding pro se, raises claims under 42 U.S.C. § 1983 and state

law relating to events occurring at the University of Washington Harborview Medical Center

(Harborview) in early January 2019.  Dkts. 1 & 1-1.  She named as Defendants Washington State

Patrol Troopers Andrew Vanderwielen and Edward Collins, Seattle Police Officer Brian Hunt,

the City of Seattle, and University of Washington employees Jane Gurevich, a Harborview

Security Officer, and Dr. Riddhi Kothari, D.O., a former Harborview physician.  *See id*.  The

Court dismissed Plaintiff's claims against Dr. Kothari and Collins, as well as her claims against

Vanderwielen for damage to and seizure of her personal property.  Dkts. 80 & 104.  The Court

denied dismissal of the excessive force claim against Vanderwielen without prejudice to his

filing of a summary judgment motion in relation to that claim.  Dkt. 104.

Defendant Jane Gurevich now moves for summary judgment and dismissal of Plaintiff's claims. Dkt. 107. Plaintiff opposes that motion, Dkt. 120, and Gurevich moves to strike portions of the opposition, Dkt. 122 at 1-2.[1] The Court, having considered the relevant briefing and evidence, along with the remainder of the record, herein finds and concludes as stated below.

BACKGROUND

Plaintiff's claims against Gurevich relate to events occurring on January 6, 2019. *See* Dkt. 1. Gurevich is a Security Officer at Harborview. Dkt. 108, ¶2. Harborview is operated by the University of Washington, which is an agency of the State of Washington. *See id*.

A.    Factual Allegations and Background

In her Complaint, Plaintiff alleges that, on the day of the incident, she was experiencing significant physical and mental distress, with potential problems including "hypothermia, a panic attack, nervous breakdown, and being really disoriented." Dkt. 1-1 at 2-3. She arrived at Harborview by ambulance, checked in, but was not permitted to see a doctor. *Id*. at 3. Vanderwielen and Gurevich claimed Plaintiff was "'flopping around' on the waiting room floor," and "needed to be forcibly discharged without being seen by a doctor[.]" *Id*. Vanderwielen demanded Plaintiff get into a wheelchair and "wheeled her erratically into a metal detector, parking garage ticket machine, and the wall, frightening [her]." *Id*. While

---

[1] Plaintiff also filed a surreply, Dkt. 123, prompting Defendant's filing of a Motion to Strike Plaintiff's Improper Surreply, Dkt. 126, Plaintiff's Motion to File 13-Page Surreply, Dkt. 127, Plaintiff's Opposition to the Motion to Strike the Improper Surreply, Dkt. 128, and Defendant's Opposition to Motion for Leave to File 13-Page Surreply and Reply on Motion to Strike, Dkt. 129. Plaintiff's surreply does not comply with Local Civil Rule (LCR) 7(g) because it is not strictly limited to requests to strike material in the opposing party's reply, was not preceded by the filing of an intent to file a surreply, and exceeds three pages. Accordingly, the surreply and the extraneous argument contained within are not considered by the Court. LCR 7(g)(2) ("Extraneous argument or a surreply filed for any other reason will not be considered.") **Given this finding, the Court herein STRIKES as moot the two motions filed subsequent to the surreply, Dkts. 126 & 127, and advises the parties to refrain from submitting documents or other filings neither requested by the Court, nor allowed under the Court's rules.**

1    Vanderwielen claimed he tried to stand Plaintiff up and she "'flopped to the ground,'" Plaintiff

2    "recalls that he then body slammed her to the ground." *Id*. at 3-4.  Also, while lying on the

3    ground and "not resisting arrest or assaulting anyone in anyway, . . . Gurevich leaned on and

4    squished [P]laintiff's knees a lot" and Vanderwielen cut through a handle on her handbag with a

5    knife, "causing property damage[.]" *Id*. at 4.  Gurevich falsely claimed Plaintiff "assaulted

6    [Gurevich] while lying prone on the ground . . . by kicking her on the side several times[,]"

7    resulting in Plaintiff's arrest and false imprisonment.  *Id*.

8         Gurevich offers a different depiction of events, as described below and supported by a

9    Harborview surveillance video, still photos taken from the video, and Gurevich's January 13,

10   2019 incident report.  Dkt. 107 at 2-4 & Dkt. 108, ¶¶3-4 & Exs. A-B.  Gurevich reported that,

11   after a registered nurse requested that Plaintiff be evicted from Harborview, she arrived to find

12   Plaintiff screaming at Vanderwielen and another security officer and asking to be taken to jail.

13   Dkt. 108, Ex. B.  Plaintiff refused to leave the facility.  *Id*.

14        The video begins with Plaintiff engaged in conversation with Vanderwielen, Gurevich,

15   and the other security officer.  *Id*., Ex. A.  When Gurevich and the others attempt to bring

16   Plaintiff to a standing position, Plaintiff resists and twice drops her own body to the floor.  Dkt.

17   107 at 2 & Dkt. 108, Exs. A-B.  Gurevich retrieves a wheelchair and, along with Vanderwielen

18   and the other security officer, places Plaintiff in the wheelchair and begins to move toward the

19   exit.  *Id*.

20        As the wheelchair moves, Plaintiff continues to resist by attempting to get out of the

21   wheelchair and by using her feet to stop the chair from moving and to push off from surrounding

22   objects.  Dkt. 107 at 3 & Dkt. 108, Exs. A-B.  After the wheelchair is turned in the opposite

23   direction, Plaintiff again stands up, tries to pull away from Vanderwielen and Gurevich, and,

1    despite their efforts to stop her, goes back to the ground.  *Id*.  Plaintiff actively resists both before

2    and after she reaches the ground, struggling with her upper and lower body and kicking her legs.

3    Dkt. 107 at 4 & Dkt. 108, Exs. A-B.

4           With Plaintiff on the ground, Gurevich and the others act to gain control.  Vanderwielen

5    and the other security officer secure her arms and upper body, Gurevich and a third security

6    officer secure her lower body and legs, and Vanderwielen applies handcuffs to her wrists.  *Id*.

7    Gurevich reports that Plaintiff was at that point repeatedly asked to let go of her purse, which

8    needed to be checked for weapons, but refused. Dkt. 108, Ex. B.  Vanderwielen then cut a purse

9    strap to enable removal of the purse.  *Id*.  Plaintiff is subsequently allowed to move into a seated

10   position on the floor and, later, in a nearby chair.  *Id., Exs. A & B.  Gurevich puts the purse

11   through a metal detector and places it on a chair near Plaintiff.  *Id*.  Seattle Police Department

12   Officers who have arrived on the scene take statements from Gurevich and others, place Plaintiff

13   under arrest for assault for kicking Gurevich, and escort Plaintiff out of Harborview.  *Id*.

14          In her opposition, Plaintiff denies she moved volitionally to the floor and contends she

15   was "pushed, prodded, dragged and shoved to the ground[.]" Dkt. 120 at 10-11.  She contends

16   Gurevich harassed, intimidated, and humiliated her in an effort to prevent her from accessing

17   medical care, tried to steal her purse, and asked her to leave despite her serious medical and

18   psychiatric issues.  *Id*. at 8.  She contends both Vanderwielen and Gurevich body slammed her to

19   the ground and that Gurevich "forcibly sickl[ed]" and pointed her ankle in an effort to sprain or

20   injure it, "squish[ed] her knees a lot," and "bounc[ed]" on her knees and ankles, despite the fact

21   Plaintiff was "prone and obviously not resisting arrest[.]" *Id*. at 6, 9, 16, 19.  Plaintiff denies she

22   kicked Gurevich or that the video or photos clearly show any such contact, and contends she was

23   falsely imprisoned through a false assault charge.  *Id*. at 6 & 11-12.  She also contends that, as a

1    result of this incident, she "grew a new bone spur on the top of my right ankle/instep" and

2    experienced "significant knee and other joint pain", stress, and new and/or aggravated

3    psychiatric issues.  *Id.* at 9.

4    B.    Procedural History and Claims

5         On January 6, 2022, Plaintiff filed her Complaint in this Court.  Dkt. 1-1.  She alleges

6    Gurevich is liable for torts of assault, personal injury, property damage, false arrest, and false

7    imprisonment.  *Id.*, ¶¶4.2-4.3.  She also brings claims against Gurevich for excessive force and

8    damage to and seizure of her personal property in violation of her Fourth and Fourteenth

9    Amendment rights.  *Id.*, ¶4.7.  Plaintiff did not file a tort claim against either Gurevich or her

10   employer prior to filing her Complaint.  *See* Dkt. 16, ¶3 & Dkt. 80 at 2.

11        Gurevich filed her Answer and Affirmative Defenses on February 25, 2022.  Dkt. 13.  On

12   February 27, 2022, Plaintiff filed a tort claim with the Office of Risk Management, Department

13   of Enterprise Services (DES).  Dkt. 68-1, ¶5.  Gurevich now seeks dismissal on summary

14   judgment.  Dkt. 107.

15                                    DISCUSSION

16        In seeking summary judgment, Gurevich argues Plaintiff's federal claims should be

17   dismissed on the merits and because she is entitled to qualified immunity.  She argues Plaintiff's

18   state law claims should be dismissed due to Plaintiff's failure to comply with the pre-suit notice

19   requirements of RCW 4.92, the statute of limitations bar, and their lack of merit.  The Court

20   below addresses the summary judgment motion, opposition, and Gurevich's motion to strike.

21   A.    Motion to Strike

22        Gurevich moves to strike portions of Plaintiff's opposition brief.  First, Gurevich points

23   to Plaintiff's statement that she developed a bone spur as a result of Gurevich's use of force.  *See*

1    Dkt. 120 at 9 & Dkt. 120-1 at 3 (photographs purporting to show bone spur).  She argues this

2    statement should be stricken as an unsupported medical causation opinion.  *See, e.g., Schudel v.*

3    *Gen. Elec. Co.*, No. 99–36089, 2002 WL 972156, at *2 (9th Cir. 2002) ("Because his injuries

4    involved obscure medical factors and laypeople could not determine the injuries' cause without

5    resorting to speculation or conjecture, expert testimony was required to establish causation.")

6    Second, Gurevich points to various statements offered by Plaintiff in relation to the events

7    depicted on the surveillance video, including:  (1) a doctor's statement that the video showed

8    Plaintiff being "'brought to the ground.'"; (2) a Seattle Police Officer's statement that "any

9    kicking that occurred would be in self-defense . . . and not assaultive behavior."; and (3) a

10   therapist's statement that he was "'disgusted by the lack of empathy that [he was] seeing

11   displayed."  Dkt. 120 at 9, 11-12, 14.  Gurevich argues these statements should be stricken as

12   hearsay.  *See* Fed. R. Evid. 801-802.  She also deems the statements unhelpful in that the video

13   does not benefit from commentary by those who were not a part of the encounter.

14           The Court "can only consider admissible evidence in ruling on a motion for summary

15   judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  *Accord Weil v.*

16   *Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 998 (9th Cir. 2019).  At the summary judgment

17   stage, the Court focuses on the admissibility of the evidence's content, not on the admissibility of

18   its form.  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also Block v. City of Los*

19   *Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not

20   necessarily have to produce evidence in a form that would be admissible at trial, as long as the

21   party satisfies the requirements of Federal Rules of Civil Procedure 56."); *Fed. Deposit Ins.*

22   *Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 1991) ("[T]he nonmoving party need not

23   produce evidence 'in a form that would be admissible at trial in order to avoid summary

ORDER GRANTING JANE GUREVICH'S
MOTION FOR SUMMARY JUDGMENT - 6

1  judgment.'") (quoted source omitted)).  The decision to exclude evidence lies within the Court's

2  discretion.  *Orr,* 285 F.3d at 773.

3          In this case, the Court finds it need not delve into questions of admissibility upon

4  concluding none of the challenged material would affect the Court's ruling on summary

5  judgment.  For example, even assuming Plaintiff could present admissible evidence to support

6  her contention she developed a bone spur as a result of her interactions with Gurevich, it remains

7  that her excessive force claim fails on the merits for the reasons discussed below.  The Court also

8  agrees with Gurevich's assessment of the above-described statements as unhelpful to the Court's

9  consideration of the evidence and Plaintiff's claims.[2]  The Court, as such, DENIES the motion to

10 strike as unnecessary and proceeds to consideration of Plaintiff's claims on the merits.

11 B.        Motion for Summary Judgment

12          1.        Summary Judgment Standard:

13          Summary judgment is appropriate when there is no genuine issue of material fact and the

14 moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party

15 is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

16 showing on an essential element of the nonmoving party's case with respect to which the

17 nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

18 (1986).

19          The moving party bears the initial burden of showing "there is an absence of evidence to

20 support the nonmoving party's case." *Id*. at 325.  It can do so by producing affirmative evidence

21 negating an essential element of the nonmovant's case or by establishing the nonmovant lacks

22

23          [2] It should be noted that Plaintiff's other filings show the statement referring to a lack of empathy relates to an incident occurring in Baltimore, Maryland and not to Plaintiff or the events discussed herein. *See, e.g.*, Dkt. 81 at 7-8 & Dkt. 120 at 14-15.

ORDER GRANTING JANE GUREVICH'S
MOTION FOR SUMMARY JUDGMENT - 7

1   the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine*

2   *Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).   The burden then shifts to

3   the nonmoving party to establish a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v.*

4   *Zenith Radio Corp*., 475 U.S. 574, 585-87 (1986).  "Only disputes over facts that might affect the

5   outcome of the suit under the governing law will properly preclude the entry of summary

6   judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

7          On a motion for summary judgment, the court views the evidence and draws inferences

8   in the light most favorable to the nonmoving party.  *Id*. at 255; *Matsushita Elec. Indus. Co.*, 475

9   U.S. at 587.  However, the nonmoving party "must do more than simply show that there is some

10  metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585.  Nor

11  may summary judgment be defeated through a mere "scintilla of evidence" supporting the

12  position of the non-moving party, *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th

13  Cir. 1995), or through allegations in the complaint, "unsupported conjecture[,] or conclusory

14  statements." *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).  In

15  addition, where videotape evidence "quite clearly contradicts" the non-moving party's version of

16  the facts, a court deciding a motion for summary judgment should "view[] the facts in the light

17  depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("When opposing

18  parties tell two different stories, one of which is blatantly contradicted by the record, so that no

19  reasonable jury could believe it, a court should not adopt that version of the facts for purposes of

20  ruling on a motion for summary judgment.")

21          2.     Section 1983 Claims:

22          Plaintiff brings claims under § 1983.  In order to sustain a § 1983 claim, a plaintiff must

23  show (1) she suffered a violation of rights protected by the Constitution or created by federal

statute, and (2) the violation was proximately caused by a person acting under color of state or federal law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Plaintiff brings § 1983 claims against Gurevich as a state actor, alleging excessive force and damage to and seizure of her personal property in violation of her Fourth and Fourteenth Amendment rights.  Dkt. 1-1, ¶4.7.  She also appears to assert new claims against Gurevich in her opposition brief, including the denial of her right to medical care in violation of her rights under the Eighth and Fourteenth Amendments and the Emergency Medical Treatment and Active Labor Act (EMTALA).

A claim raised for the first time in opposition to a summary judgment motion, but not included in a complaint, is not properly before the Court.  *Trishan Air, Inc. v. Federal Ins. Co.*, 635 F.3d 422, 435 (9th Cir. 2011).  *See also Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court.") (citations omitted).  However, in light of Plaintiff's pro se status and considering the briefing provided by Gurevich in reply, the Court herein addresses all of the above-described claims.

a.   Excessive force:

"*[A]ll* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).  The evaluation of a Fourth Amendment excessive force claim requires a determination as to

1   "whether the officers' actions were objectively reasonable in light of the facts and circumstances

2   confronting them." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022)

3   (cleaned up and quoted sources omitted).

4          To make the determination, the Court considers:  "'(1) the severity of the intrusion on the

5   individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2)

6   the government's interest in the use of force, and (3) the balance between the gravity of the

7   intrusion on the individual and the government's need for that intrusion.'"  *Id*.  (quoted sources

8   omitted).  The Court considers the "'specific factual circumstances'" in the case to classify the

9   type and amount of force used, including the nature and degree of physical contact, the risk of

10  harm, and actual harm experienced.  *Id*. at 1152.  In evaluating the government's interests at

11  stake, the Court considers "(1) how severe the crime at issue was, (2) whether the suspect posed

12  an immediate threat to the safety of the officers or others, and (3) whether the suspect was

13  actively resisting arrest or attempting to evade arrest by flight." *Id*. at 1153.

14         The Court considers the reasonableness of the force used "'from the perspective of a

15  reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  *Id*. at 1151

16  (quoting *Graham*, 490 U.S. at 396).  "It is also well-established that police officers 'are not

17  required to use the least intrusive degree of force possible.'"  *Id*. (quoting *Lowry v. City of San

18  Diego*, 858 F.3d 1248, 1259 (9th Cir. 2017)).  "When an officer carries out a seizure that is

19  reasonable, taking into account all relevant circumstances, there is no valid excessive force

20  claim."  *County of Los Angeles v. Mendez*, __ U.S. ___, 137 S.Ct. 1539, 1547 (2017).

21         In this case, the surveillance video clearly contradicts Plaintiff's allegations she was body

22  slammed, pushed, prodded, dragged, or shoved to the ground.  The video shows that Plaintiff, on

23

ORDER GRANTING JANE GUREVICH'S
MOTION FOR SUMMARY JUDGMENT - 10

more than one occasion and of her own volition, brought her body to the ground and did so despite the efforts of Gurevich and others to keep her upright.

The video also supports the conclusion that Gurevich used a low-level amount of force throughout the events in question, including using her hands, knees, and/or her body weight to gain control of and immobilize the lower half of Plaintiff's body.  *See, e.g., Williamson*, 23 F.4th at 1152 (finding type and amount of force used minimal where officers did not strike plaintiff, "throw her to the ground, or use any compliance techniques or weapons for the purpose of inflicting pain on her[,]" and, rather, "held her by her arms and lifted her so they could pull her out of the meeting room after she went limp and refused to leave on her own or cooperate in being removed."; observing that the force used was less significant than a case in which officers were "'yanking, pulling, jerking, and twisting' a person whose legs [were] pinned underneath a car seat" and which the Court had also found minimal).  Plaintiff's assertions that Gurevich "sickled", "squished", and "bounced" on her are vague, conclusory, and unsupported.  Nor does the contention she developed a bone spur and experienced knee pain alter the Court's conclusion. *See, e.g., id*. (finding minimal use of force despite the fact plaintiff's injuries included a sprained wrist, mild swelling, and a torn rotator cuff).  The Court can "infer from the minor nature of a plaintiff's injuries that the force applied was minimal." *Felarca v. Birgeneau*, 891 F.3d 809 (9th Cir. 2018) (finding amount of force minimal where plaintiffs did not suffer injuries from baton blows that either required medical treatment or kept them from returning to a protest).

Given the placement of the surveillance cameras, the blurring of details to protect Plaintiff's privacy, and other obstructions of the view, precise details of the events are not always ascertainable from the video or still photos.  It is, for example and as Plaintiff suggests, difficult to pinpoint any exact moment(s) in which it can be confirmed Plaintiff's legs made contact with

1    Gurevich.  However, it is indisputable that Plaintiff repeatedly kicked her legs in very close

2    proximity to Gurevich.  It is further indisputable that, in kicking and otherwise physically

3    struggling, Plaintiff actively resisted the efforts of Gurevich and others to gain her compliance

4    and removal from the premises.  It is also clear that, ultimately, four individuals acted together to

5    overcome Plaintiff's resistance, restrain her movement, and allow for the application of

6    handcuffs.  Also, these events took place in the emergency department of a hospital, with

7    numerous passersby, including patients, visitors, and employees.

8         The Court, considering the totality of the circumstances, has no difficulty in concluding

9    Gurevich's actions were objectively reasonable.  Plaintiff's excessive force claim is thus

10   properly dismissed.

11              b.    Property damage and seizure:

12        Plaintiff also alleges Gurevich is liable for the damage to and seizure of her personal

13   property in violation of her rights under the Fourteenth Amendment.  This allegation appears to

14   relate to Plaintiff's purse.  There is, however, no evidence supporting such a Fourteenth

15   Amendment claim against Gurevich.  The evidence shows Vanderwielen, not Gurevich, cut the

16   strap of Plaintiff's purse and that Gurevich did no more than put the purse through a metal

17   detector and place it on a chair near Plaintiff.  Dkt. 108, Exs. A & B ("The purse was scanned at

18   the metal detector and then given back to Ms. Chang.").  Moreover, and as the Court previously

19   observed, Plaintiff has not alleged she was actually deprived of her handbag or any items within.

20   *See* Dkt. 104 at 23.  *See also id.*, Exs. A & B.   Gurevich is entitled to dismissal of this claim.

21   *See* Dkt. 104 at 23-24 (dismissing Fourteenth Amendment claim against Vanderwielen where

22   Plaintiff failed to show she was deprived of a constitutionally protected property interest or that

23   the conduct alleged rose to the level of a deprivation of a fundamental right or liberty interest).

1    *See also id.* at 22 (also finding no Fourth Amendment violation associated with Plaintiff's purse

2    where Vanderwielen had an interest in protecting an individual suffering from a mental health

3    crisis from harming herself or others and there was no factual support for a claim any search was

4    not a permissible search incident to an arrest).

5              c.    Medical Care:

6          Plaintiff, finally, fails in her attempt to identify medical care-related claims against

7    Gurevich.  First, Plaintiff cannot rely on the Eighth Amendment because she was not a convicted

8    prisoner at the time of the incident.  *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th

9    Cir. 2021) (Eighth Amendment provides for a constitutional right to adequate medical treatment

10   for inmates serving custodial sentences following a criminal conviction) (citations omitted), *cert.*

11   *denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021).  Second, Plaintiff cannot

12   rely on the EMTALA because such a claim cannot be pursued under § 1983 and only provides

13   for redress from a "participating hospital[.]"  *Trahan v. Clayton Dublier & Rice*, 741 F. App'x

14   397, 399 (9th Cir. 2018).  Third, Plaintiff does not allege a Fourth Amendment violation through

15   the denial of medical care *after* her arrest or a Fourteenth Amendment violation through the

16   failure to provide adequate medical care to a pretrial detainee.  *See Sandoval*, 985 F.3d at 667

17   (pretrial detainee's rights to medical care arise under the Fourteenth Amendment); *Est. of*

18   *Cornejo ex rel. Solis v. City of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015) ("[S]uspects

19   have a Fourth Amendment right to 'objectively reasonable post-arrest [medical] care' until the

20   end of the seizure.") (quoting *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th

21   Cir. 2006)); and *Rosales v. Cnty. of San Diego*, 511 F. Supp. 3d 1070, 1091 (S.D. Cal. 2021)

22   ("Claims for the denial of medical assistance after an arrest are analyzed under the Fourth

23   Amendment.").  *But see J. K. J. v. City of San Diego*, 17 F.4th 1247, 1257 (9th Cir. 2021)

1   (analyzing arrestee's right to medical care under both the Fourth and Fourteenth Amendments

2   while declining to decide which governs).  Plaintiff, instead, appears to allege a denial of medical

3   care *prior* to her arrest.  Because she does not set forth any basis or support for such a claim, it

4   cannot survive summary judgment.  *See Arrington-Bey v. City of Bedford Heights, Ohio*, 858

5   F.3d 988, 993 (6th Cir. 2017) (finding no clearly established law, in the Sixth Circuit or

6   elsewhere, required arresting officers to take a mentally unstable individual to a hospital rather

7   than a jail).  *See also Colson v. City of Alcoa, Tennessee*, 37 F.4th 1182, 1188-89 (6th Cir. 2022)

8   (stating that "by definition, the right to medical care is triggered only once a person is in the

9   government's custody, which follows a seizure[,]" and holding "that there is no Fourth

10   Amendment right to medical care.") (citation omitted).

          d.      Qualified immunity:

12      Gurevich also asserts her entitlement to qualified immunity in relation to all of Plaintiff's

13   claims.  Having found Plaintiff's claims subject to dismissal for the reasons discussed above, the

14   Court need not and therefore does not conduct a qualified immunity analysis in relation to those

15   claims.

          3.      State Law Claims:

17      Gurevich argues that Plaintiff's state law claims should be dismissed due to Plaintiff's

18   failure to comply with Washington's tort claim presentment statute.  The Court, as discussed

19   below and as previously determined in relation to both Dr. Kothari and the Washington State

20   Patrol Defendants, *see* Dkts. 65, 80 & 104, finds Plaintiff's state law claims properly dismissed.

21      Pursuant to RCW 4.92.100:  "All claims against the state, or against the state's officers,

22   employees, or volunteers, acting in such capacity, for damages arising out of tortuous conduct,

23   must be presented to the risk management division."  That is, an individual must first file a claim

with the Office of Risk Management before filing a tort action against the State of Washington or

against state employees.  *Levy v. State*, 91 Wn. App. 934, 941, 957 P.2d 1272 (1998).[3]  Also,

pursuant to RCW 4.92.110:

> No action subject to the claim filing requirements of RCW 4.92.100 shall be
> commenced against the state, or against any state officer, employee, or volunteer,
> acting in such capacity, for damages arising out of tortious conduct until sixty
> calendar days have elapsed after the claim is presented to the office of risk
> management in the department of enterprise services.

These requirements "'allow government entities time to investigate, evaluate, and settle claims.'"

*Lee v. Metro Parks Tacoma*, 183 Wn. App. 961, 968, 335 P.3d 1014 (2014) (quoting *Medina v.*

*Pub. Util. Dist. No. 1 of Benton Cnty.*, 147 Wn. 2d 303, 310, 53 P.3d 993 (2002)).

The RCW 4.92 claim-filing requirements are jurisdictional, mandatory, and operate as a

condition precedent to a suit against government bodies and employees.  *Mangaliman v.*

*Washington State DOT*, C11-1591-RSM, 2014 WL 1255342, at *4 (W.D. Wash. Mar. 26, 2014)

(citing *Levy*, 91 Wn. App. at 941-42).  Courts strictly construe compliance with these statutory

filing requirements.  *Schoonover v. State*, 116 Wn. App. 171, 178, 64 P.3d 677 (2003) (citations

omitted).  It is also well settled that dismissal of a case is proper when a plaintiff fails to comply

with the statutorily-mandated claim filing procedures.  *Hyde v. University of Washington*

*Medical Center*, 186 Wn. App. 926, 929, 347 P.3d 918 (2015); *Levy*, 91 Wn. App. at 942 (citing

*Kleyer v. Harborview Med. Ctr.*, 76 Wn. App. 542, 545-46, 887 P.2d 468 (1995)).  *See also*

*Malone v. Huguenin*, C11-5643-RBL, 2012 WL 3877731, at *3 (W.D. Wash. Sept. 6, 2012)

("[Plaintiff's] state law claims must be dismissed.  [Plaintiff] fails to meet a condition precedent:

he failed to file a tort claim with the State prior to filing this complaint, as required by RCW

---

[3]  The pre-suit notice requirements do not apply to Plaintiff's § 1983 claims.  *Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999) ("In general, state notice of claim statutes have no applicability to § 1983 actions.") (citing *Felder v. Casey*, 487 U.S. 131, 140–41 (1988)).

1    4.92.100.”); *Amo v. Harborview Med. Ctr.*, 13 Wn. App. 2d 1019, 2020 WL 1917461, at *3-4

2    (“[B]efore filing her complaint for medical negligence against Harborview and its employee,

3    Amo was required to file a claim with the office of risk management in Olympia, pursuant to

4    RCW 4.92.110 and RCW 4.92.210.  Because she failed to do so, the trial court properly

5    dismissed the complaint.”), *review denied*, 196 Wn. 2d 1010, 473 P.3d 258 (2020).  This remains

6    true whether or not a plaintiff is aware of the pre-suit filing requirement.  As observed by this

7    Court:  “No court has excused compliance with the presuit claim filing statutes based on a lack

8    of knowledge of the requirements.  To the contrary, compliance with the claim filing procedure

9    is mandatory even where the requirements might appear to be ‘harsh and technical.’” *Amo*, 2020

10   WL 1917461, at *3 (quoting *Levy*, 91 Wn. App. at 942).

11          Here, Plaintiff submitted a tort claim form to DES on February 27, 2022, Dkt. 68-1, ¶5,

12   almost two months *after* the filing of her Complaint on January 6, 2022, Dkt. 1.  Plaintiff does

13   not dispute this fact.  Submitting a tort claim after a lawsuit has commenced does not satisfy

14   Washington's pre-suit notice requirement:  “[T]he notice requirement in RCW 4.92.110 cannot

15   be satisfied after a litigant is already inside the courthouse—it is a condition precedent to

16   entering.” *Pickard-Aguilar v. Washington State Emp. Sec. Dep’t*, No. C20-1248-RSM-DWC,

17   2020 WL 8093446, at *2 (W.D. Wash. Dec. 18, 2020), *report and recommendation adopted*,

18   2021 WL 124334 (Jan. 13, 2021) (citing *Mangaliman*, 2014 WL 1255342, *4).  Plaintiff's

19   failure to meet this jurisdictional condition precedent requires this Court to dismiss her state law

20   claims.[4]  In addition, in finding Plaintiff's state law claims subject to dismissal on this basis, the

21

22

23          [4] Plaintiff also alludes to issues of estoppel and equitable tolling, without providing any
     substantive argument in support.  *See* Dkt. 120 at 20.  The Court previously addressed and rejected those
     arguments, *see* Dkt. 65 at 7-10, and declines to reiterate its reasoning herein.

Court need not and therefore does not address the additional arguments for dismissal included in the motion for summary judgment.

<u>CONCLUSION</u>

For the reasons set forth above, the Court finds Defendant Jane Gurevich entitled to summary judgment and dismissal of Plaintiff's claims.  Accordingly, Gurevich's Motion for Summary Judgment, Dkt. 107, is GRANTED, and Plaintiff's claims against Gurevich are DISMISSED with prejudice.

Dated this 12th day of October, 2022.


S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING JANE GUREVICH'S
MOTION FOR SUMMARY JUDGMENT - 17