1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5
6
7

VICKI CHANG,

8                          Plaintiff,                    Case No. C22-0013-SKV

9            v.                                          ORDER GRANTING ANDREW
                                                         VANDERWIELEN'S MOTION FOR
10   ANDREW VANDERWIELEN, et al.,                        SUMMARY JUDGMENT

11                          Defendants.

12

13                              INTRODUCTION

14          Plaintiff Vicki Chang proceeds pro se in this civil matter relating to events occurring at

15   the University of Washington Harborview Medical Center (Harborview) in early January 2019.

16   Dkts. 1 & 1-1.  Plaintiff brought claims under 42 U.S.C. § 1983 and state law, and named as

17   Defendants Washington State Patrol (WSP) Troopers Andrew Vanderwielen and Edward

18   Collins, Seattle Police Officer Brian Hunt, the City of Seattle, and University of Washington

19   employees Jane Gurevich, a Harborview Security Officer, and Dr. Riddhi Kothari, D.O., a

20   former Harborview physician.  *See id*.  The Court has dismissed all of Plaintiff's claims against

21   Dr. Kothari, Gurevich, Collins, Hunt, and the City of Seattle, and all but Plaintiff's excessive

22   force claim against Vanderwielen.  Dkts. 80, 104, 130 & 140.

23          Defendant Vanderwielen now moves for summary judgment and dismissal of Plaintiff's

remaining claim.  Dkt. 152.  Plaintiff opposes the motion, Dkt. 158, and Vanderwielen moves to

1   strike portions of the opposition, Dkt. 159 at 2-3.[1]  The Court, having considered the relevant

2   briefing and evidence, along with the remainder of the record, herein finds and concludes that

3   Plaintiff's excessive force claim should be dismissed.

4                                                  BACKGROUND

5           Plaintiff's claim against Vanderwielen relates to events occurring on January 6, 2019.

6   *See* Dkt. 1.  At that time, Vanderwielen was employed by both the WSP and Puget Sound

7   Executive Services (PSES).  Dkt. 153, ¶¶3-5.  PSES contracts with Harborview, *id*., ¶4, and

8   Harborview is operated by the University of Washington, which is an agency of the State of

9   Washington, *see* Dkt. 108, ¶2.  At the time of his interactions with Plaintiff, Vanderwielen was

10  providing security services through his employment with PSES and served at the direction and

11  under the supervision of the Harborview security department.  Dkt. 153, ¶4.

12  A.      Factual Allegations and Background

13          Plaintiff alleges that, on the day of the incident, she was experiencing significant physical

14  and mental distress, with potential problems including "hypothermia, a panic attack, nervous

15  breakdown, and being really disoriented."  Dkt. 1-1 at 2-3.  She arrived at Harborview by

16  ambulance, checked in, but was not permitted to see a doctor.  *Id*. at 3.  Vanderwielen and

17  Gurevich claimed Plaintiff was "'flopping around' on the waiting room floor," and "needed to be

18  forcibly discharged without being seen by a doctor[.]"  *Id*.  Vanderwielen demanded Plaintiff get

19  into a wheelchair and "wheeled her erratically into a metal detector, parking garage ticket

20  machine, and the wall, frightening [her]."  *Id*.  While Vanderwielen claimed he tried to stand

21

22          _____

23          [1] Plaintiff also, after the filing of Vanderwielen's reply brief and the noting date for the
        dispositive motion, filed a second memorandum in opposition to the motion.  Dkt. 160.  Because this
        memorandum is untimely and not allowed for under this Court's Local Civil Rules (LCR) it is not
        considered herein.  *See generally* LCR 7.

ORDER GRANTING ANDREW
VANDERWIELEN'S MOTION FOR SUMMARY
JUDGMENT - 2

1   Plaintiff up and she "'flopped to the ground,'" Plaintiff "recalls that he then body slammed her to

2   the ground." *Id*. at 3-4.  Also, while lying on the ground and "not resisting arrest or assaulting

3   anyone in anyway, . . . Gurevich leaned on and squished [P]laintiff's knees a lot" and

4   Vanderwielen cut through a handle on her handbag with a knife, "causing property damage[.]"

5   *Id*. at 4.  Gurevich falsely claimed Plaintiff "assaulted [Gurevich] while lying prone on the

6   ground . . . by kicking her on the side several times[,]" resulting in Plaintiff's arrest and false

7   imprisonment.  *Id*.

8        Vanderwielen depicts the events differently and provides a surveillance video from

9   Harborview.  *See* Dkts. 152-54.  As previously described by the Court:

10              . . . Gurevich reported that, after a registered nurse requested that Plaintiff
        be evicted from Harborview, she arrived to find Plaintiff screaming at
11      Vanderwielen and another security officer and asking to be taken to jail.  Plaintiff
        refused to leave the facility.

12
            The video begins with Plaintiff engaged in conversation with
13      Vanderwielen, Gurevich, and the other security officer.  When Gurevich and the
        others attempt to bring Plaintiff to a standing position, Plaintiff resists and twice
14      drops her own body to the floor.  Gurevich retrieves a wheelchair and, along with
        Vanderwielen and the other security officer, places Plaintiff in the wheelchair and
15      begins to move toward the exit.

16          As the wheelchair moves, Plaintiff continues to resist by attempting to get
        out of the wheelchair and by using her feet to stop the chair from moving and to
17      push off from surrounding objects.  After the wheelchair is turned in the opposite
        direction, Plaintiff again stands up, tries to pull away from Vanderwielen and
18      Gurevich, and, despite their efforts to stop her, goes back to the ground.  Plaintiff
        actively resists both before and after she reaches the ground, struggling with her
19      upper and lower body and kicking her legs.

20          With Plaintiff on the ground, Gurevich and the others act to gain control.
        Vanderwielen and the other security officer secure her arms and upper body,
21      Gurevich and a third security officer secure her lower body and legs, and
        Vanderwielen applies handcuffs to her wrists.  Gurevich reports that Plaintiff was
22      at that point repeatedly asked to let go of her purse, which needed to be checked
        for weapons, but refused.  Vanderwielen then cut a purse strap to enable removal
23      of the purse.  Plaintiff is subsequently allowed to move into a seated position on
        the floor and, later, in a nearby chair.  Gurevich puts the purse through a metal

ORDER GRANTING ANDREW
VANDERWIELEN'S MOTION FOR SUMMARY
JUDGMENT - 3

detector and places it on a chair near Plaintiff.  Seattle Police Department Officers
who have arrived on the scene take statements from Gurevich and others, place
Plaintiff under arrest for assault for kicking Gurevich, and escort Plaintiff out of
Harborview.

Dkt. 130 at 3-4 (internal citations omitted).  *See also* Dkt. 153, ¶6 & Ex. A (surveillance video).

In her opposition, Plaintiff denies she physically resisted or moved volitionally to the
floor, and contends she was forcibly "dragged, shoved, and prodded" off of a chair, imprisoned
in a wheelchair, body slammed, "pushed, prodded, dragged, and shoved" to the ground, and
wheeled into a security monitor and parking ticket vending machines.   Dkt. 158 at 7, 15-16.
She contends Vanderwielen also grabbed her arm, restrained her wrist, and aided Gurevich in
twisting her leg and ankle, "squishing" her knees, and "forcibly sickling and pointing" her ankle.
*Id*. at 7-8.  She contends that she was denied needed medical care and falsely accused of harming
Gurevich.  *Id*. at 7-12.  Plaintiff asserts that she suffered injuries as a result of these events,
including a right ankle fracture, fracture or trauma to her right foot arch, a right foot "crush
injury", and vascular damage.  *Id*. at 10-12.

B.      Claims and Procedural History

Plaintiff filed her Complaint in this Court in January 2022.  Dkt. 1-1.  She alleged
Vanderwielen was liable for the torts of assault, personal injury, property damage, false arrest,
false imprisonment, damage to property, and emotional distress, and that he used excessive force
and damaged and seized her personal property in violation of her Fourth and Fourteenth
Amendment rights.  *Id*. at 7-8.  In July 2022, the Court partially granted Vanderwielen's motion
to dismiss, dismissing all of Plaintiff's state law claims and her § 1983 claims for damage to and
seizure of her personal property.  Dkt. 104.  The Court denied the motion as to the excessive
force claim and as to qualified immunity in relation to that claim, noting Vanderwielen could

ORDER GRANTING ANDREW
VANDERWIELEN'S MOTION FOR SUMMARY
JUDGMENT - 4

1    reassert his entitlement to qualified immunity on the claim after further development of the

2    record and through a motion for summary judgment. *Id.*   Vanderwielen now seeks dismissal of

3    the excessive force claim.  Dkt. 107.

4                                                    DISCUSSION

5              In seeking summary judgment, Vanderwielen argues that he is entitled to qualified

6    immunity and that he did not violate Plaintiff's constitutional rights.  The Court below addresses

7    those arguments, Plaintiff's opposition, and Vanderwielen's motion to strike.

8    A.    Motion to Strike

9              Vanderwielen moves to strike portions of Plaintiff's opposition brief.  Specifically,

10   Vanderwielen requests that the Court strike purported statements from witnesses without

11   personal knowledge of the events and constituting improper hearsay, evidence of unrelated

12   medical issues, and Plaintiff's opinions on medical causation based on her own interpretations of

13   medical records.  *See* Dkt. 159 at 2-3 (citing Dkt. 158).  Vanderwielen also asserts that Plaintiff

14   appears to attempt to reassert claims previously dismissed by the Court or to recharacterize her

15   claims in an effort to avoid summary judgment.  He requests that any such arguments be

16   disregarded.

17             The Court "can only consider admissible evidence in ruling on a motion for summary

18   judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  *Accord Weil v.*

19   *Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 998 (9th Cir. 2019).  At the summary judgment

20   stage, the Court focuses on the admissibility of the evidence's content, not on the admissibility of

21   its form.  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also Block v. City of Los*

22   *Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not

23   necessarily have to produce evidence in a form that would be admissible at trial, as long as the

party satisfies the requirements of Federal Rules of Civil Procedure 56."); *Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 1991) ("[T]he nonmoving party need not produce evidence 'in a form that would be admissible at trial in order to avoid summary judgment.'") (quoted source omitted)).  The decision to exclude evidence lies within the Court's discretion.  *Orr,* 285 F.3d at 773.

In this case, the Court finds it need not delve into questions of admissibility upon concluding that none of the challenged material would affect the Court's ruling on summary judgment.  For example, even if Plaintiff could present admissible evidence to support her contention that she suffered some type of injury as a result of the events in question, it remains that her excessive force claim fails on the merits for the reasons discussed below.  The Court also declines to consider arguments raised in relation to claims previously dismissed by the Court or otherwise unrelated to Plaintiff's remaining claim against Vanderwielen.  The Court, as such, DENIES the motion to strike as unnecessary and proceeds to consideration of the merits of Plaintiff's excessive force claim.

B.      Motion for Summary Judgment

1.      Summary Judgment Standard:

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

1      The moving party bears the initial burden of showing "there is an absence of evidence to

2   support the nonmoving party's case." *Id*. at 325.  It can do so by producing affirmative evidence

3   negating an essential element of the nonmovant's case or by establishing the nonmovant lacks

4   the quantum of evidence needed to satisfy its burden of persuasion at trial.  *Nissan Fire &*

5   *Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).   The burden then

6   shifts to the nonmoving party to establish a genuine issue of material fact.  *Matsushita Elec.*

7   *Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-87 (1986).  "Only disputes over facts that

8   might affect the outcome of the suit under the governing law will properly preclude the entry of

9   summary judgment."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

10      On a motion for summary judgment, the court views the evidence and draws inferences

11   in the light most favorable to the nonmoving party.  *Id*. at 255; *Matsushita Elec. Indus. Co.*, 475

12   U.S. at 587.  However, the nonmoving party "must do more than simply show that there is some

13   metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 585.  Nor

14   may summary judgment be defeated through a mere "scintilla of evidence" supporting the

15   position of the non-moving party, *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th

16   Cir. 1995), or through allegations in the complaint, "unsupported conjecture[,] or conclusory

17   statements."  *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).  In

18   addition, where videotape evidence "quite clearly contradicts" the non-moving party's version of

19   the facts, a court deciding a motion for summary judgment should "view[] the facts in the light

20   depicted by the videotape."  *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("When opposing

21   parties tell two different stories, one of which is blatantly contradicted by the record, so that no

22   reasonable jury could believe it, a court should not adopt that version of the facts for purposes of

23   ruling on a motion for summary judgment.")

2.    <u>Section 1983 and Qualified Immunity Standards</u>:

"Section 1983 is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred."  *Sampson v. Cty. of L.A.*, 974 F.3d 1012, 1018 (9th Cir. 2020) (cleaned up and quoted sources omitted).  To state a § 1983 claim, "a plaintiff must plausibly allege that she suffered the deprivation of a federally protected right and that the alleged deprivation was committed by a person acting under color of state law." *Id*. (cleaned up and quoted sources omitted).

Qualified immunity may shield an official from liability for damages under § 1983 "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To determine whether qualified immunity applies, the Court asks "whether (1) the plaintiff has plausibly alleged a violation of a constitutional right, and (2) the constitutional right was 'clearly established' at the time of the conduct at issue."  *Wilk v. Neven*, 956 F.3d 1143, 1148 (9th Cir. 2020) (quoting *Pearson*, 555 U.S. at 236).

3.    <u>Excessive Force Claim</u>:

Plaintiff alleges Vanderwielen used excessive force in violation of her constitutional rights.  Dkt. 1-1, ¶4.7.  "*[A]ll* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).  The evaluation of a Fourth Amendment excessive force claim requires a determination as to "whether the officers' actions were objectively reasonable in light of the facts

1    and circumstances confronting them." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th

2    Cir. 2022) (cleaned up and quoted sources omitted).

3           To make the determination, the Court considers: "'(1) the severity of the intrusion on the

4    individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2)

5    the government's interest in the use of force, and (3) the balance between the gravity of the

6    intrusion on the individual and the government's need for that intrusion.'" *Id.* (quoted sources

7    omitted).  The Court considers the "'specific factual circumstances'" in the case to classify the

8    type and amount of force used, including the nature and degree of physical contact, the risk of

9    harm, and actual harm experienced. *Id*. at 1152.  In evaluating the government's interests at

10   stake, the Court considers "(1) how severe the crime at issue was, (2) whether the suspect posed

11   an immediate threat to the safety of the officers or others, and (3) whether the suspect was

12   actively resisting arrest or attempting to evade arrest by flight." *Id.* at 1153.

13          The Court considers the reasonableness of the force used "'from the perspective of a

14   reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id*. at 1151

15   (quoting *Graham*, 490 U.S. at 396).  "It is also well-established that police officers 'are not

16   required to use the least intrusive degree of force possible.'" *Id*. (quoting *Lowry v. City of San*

17   *Diego*, 858 F.3d 1248, 1259 (9th Cir. 2017)).  "When an officer carries out a seizure that is

18   reasonable, taking into account all relevant circumstances, there is no valid excessive force

19   claim." *County of Los Angeles v. Mendez*, __ U.S. ___, 137 S.Ct. 1539, 1547 (2017).

20          In this case, the surveillance video clearly contradicts Plaintiff's allegations she was body

21   slammed, pushed, prodded, dragged, or shoved to the ground.  The video shows that Plaintiff, on

22   more than one occasion and of her own volition, brought her body to the ground and did so

23   despite the efforts of Vanderwielen and others to keep her upright.  The video also contradicts

1    Plaintiff's allegation that she was forcibly wheeled into different objects while seated in the

2    wheelchair.  The video instead shows that Plaintiff used her feet to stop and otherwise interfere

3    with the movement of the wheelchair.

4          The video also supports the conclusion that Vanderwielen used a low-level amount of

5    force throughout the events in question, including the use of minimal force in attempting to

6    escort Plaintiff from the facility, in restraining her movements as she resisted those efforts, and

7    in applying handcuffs.  *See, e.g., Williamson*, 23 F.4th at 1152 (finding type and amount of force

8    used minimal where officers did not strike plaintiff, "throw her to the ground, or use any

9    compliance techniques or weapons for the purpose of inflicting pain on her[,]" and, rather, "held

10   her by her arms and lifted her so they could pull her out of the meeting room after she went limp

11   and refused to leave on her own or cooperate in being removed."; observing that the force used

12   was less significant than a case in which officers were "'yanking, pulling, jerking, and twisting' a

13   person whose legs [were] pinned underneath a car seat" and which the Court had also found

14   minimal).

15        As the Court previously observed in assessing Plaintiff's claims against Gurevich, *see*

16   Dkt. 130, the placement of the surveillance cameras, the blurring of details to protect Plaintiff's

17   privacy, and other obstructions of the view make it difficult to ascertain the precise details of all

18   events depicted in the video.  However, Plaintiff's assertion that Vanderwielen aided Gurevich in

19   various actions, such as "squishing" her knees or "sickling" her ankle, are vague, conclusory, and

20   unsupported.  Her allegation that she suffered a variety of injuries as a result of these events is

21   similarly unsupported by the record.

22        It is, moreover, indisputable from the video evidence that Plaintiff actively resisted the

23   efforts of Vanderwielen and others to gain her compliance and remove her from the premises.  It

is also indisputable that, ultimately, four individuals acted together to overcome Plaintiff's resistance, restrain her movement, and allow for the application of handcuffs. The video further shows that these events took place in the emergency department of a hospital, with numerous passersby, including patients, visitors, and employees.

The Court, in sum and considering the totality of the circumstances, has no difficulty in concluding Vanderwielen's actions were objectively reasonable. Plaintiff's excessive force claim is thus properly dismissed.

4.   Qualified immunity:

Vanderwielen asserts his entitlement to qualified immunity in relation to Plaintiff's claim. However, having found an absence of evidence to support a constitutional violation, the Court need not and therefore does not conduct a qualified immunity analysis in relation to Plaintiff's claim.

CONCLUSION

For the reasons set forth above, the Court finds Defendant Andrew Vanderwielen entitled to summary judgment and dismissal of Plaintiff's excessive force claim. Accordingly, Vanderwielen's Motion for Summary Judgment, Dkt. 152, is GRANTED, and Plaintiff's sole remaining claim is DISMISSED with prejudice.

Dated this 14th day of April, 2023.

S. KATE VAUGHAN
United States Magistrate Judge